All right. We want to welcome you here. Normally we would be Thursday, but this is a holiday week, so it lasted from Tuesday to Friday. We have three cases on the docket this morning. Notwithstanding that, we appreciate you're taking only the time that's allotted to you. When the yellow light comes on, you have two minutes, and when the red light comes on, we ask you to conclude your argument unless you're answering a question of the court. We have read the briefs and record excerpts. We have not normally gotten into the entire record when we hear the case, and so we appreciate record citations. The first case of the morning is No. 17-40375, United States v. Melendez, a.k.a. 12. Mr. Kucera. May it please the Court, Ms. Wong. I'd like to speak to two issues this morning. First, as to the interstate commerce element, this is count two. I want to point out that the government appears to take the position that purchasing a vehicle with drug proceeds is ipso facto an effect on interstate commerce. Secondly, I'd like to point out that the government relies on a subsection of the financial transaction statute for which they didn't put on any evidence and for which the jury was not instructed. The second thing I'd like to talk about has to do with the five-council conviction for use of a minor. There's only seven verbs listed, and I'd argue that only one of those could possibly fit here and why it doesn't. We all buy vehicles, including those folks who deal in illegal controlled substances. The government has a burden under this statute to show that these particular transactions affected interstate commerce. It's not enough to simply say, well, he bought a car with drug proceeds, and therefore that's enough. On page 23 of the government brief, the government puts this. Business at the dealership also involved financing from the Laredo Federal Credit Union, selling notes to banks, obtaining insurance, getting cars at auctions in 48 states, and vehicle registering and titling. And they point site to page 1187 of the record. And it is absolutely true that there is a subsection in the financial transaction definition that speaks to that, but that's not the one the government relied on. C-4, this is the one the government relied on, a transaction which in any way affects interstate commerce involving the transfer of title, in this case it was to a vehicle, and that's what all the evidence was about. And that's what they argued in closing the argument. Subsection B says this, a transaction involving the use of a financial institution which is engaged in or the activities of which affect interstate or foreign commerce. Now, the financial institution definition does include a used car, commercially used car, subsection T, a business engaged in vehicle sales including automobile. The problem with that is the jury was never instructed on that. Obviously, as I mentioned earlier, the government put on no evidence and didn't argue that. And my argument is simply that if they didn't argue it and the jury is not instructed on it, the government cannot now rely upon it. My authorities for that are 588F2nd, 986, 993, footnote 12, and 137F3rd, 214. Are those cited in your brief? No. Well, if they're not, you need to advise the bailiff after, give us the record citations after argument. Okay. And I apologize for my ignorance. Just give her the citations or do you want me to file them? Whatever you want to do. Okay. Just don't give them to her on a Post-it note. Beg your pardon? Just don't use a Post-it note. Good tip. Thank you, sir. All right. All right, moving on then to the five counts of conviction for use of a minor. There are seven verbs used in Section 861A1, which is the statute at issue. Employ, hire, use, persuade, induce, entice, or coerce. And I don't think there's any, I would argue there's no evidence that Adan, the defendant here, employed, hired, persuaded, induced, or enticed, or coerced, Chon, his son, the individual at issue, and all these. The only possibility is use. Use, obviously, is not statutorily defined. I thought it was interesting that the government did concede in its brief on page 27 that Adan trusted and empowered Chon. There is a case that somehow or other Chon became involved. There's no denying that. So what verb would you use based on the evidence presented for how Chon suddenly was involved in this conspiracy? Well, I would begin by stating that the temptation here, I think, is to think, and I would come to the same conclusion, but for Adan, Chon would never have arguably never been involved in this. I mean, I think that's fair to say. Every one of these counts is a possession with intent to distribute count with an additional element of use of a minor. In fact, I argued in my initial brief, which was stricken because it was over length, that all the possession with intent to distribute counts are double jeopardy barred if the use of a minor count stand because they're lesser included. The point I'm trying to make here is that possession with intent to distribute is a continuing offense that begins with possession. It ends with the point in time that the controlled substance reaches its destination. There are four dates that were alleged and proven in this case, and I would argue that on none of those dates, first let me just back up and just say that there is a case that gives, I think, some help on what use means. This case is cited in my brief. It's United States v. Butler, 207 F. 3rd 839, and the jump page is 848 here. It says, In analyzing the sufficiency of evidence supporting an 861 conviction, we have looked for proof of the juvenile's subservience. Now, when I look those words up in the new Webster's Dictionary of English Language, I find servile, and I may be mispronouncing that, or obsequious, which is fawning, yielding, or slavishly obedient. So the argument I want to make here is that on these four dates, there is no interaction between Chon and Adan that would fit subservience. That's the argument that I would make. I'm not arguing that he was a stellar parent. That would be a pretty uphill battle, I think. But he's not charged with being a bad parent. In these counts, he's charged with using a minor. Those are time frame restricted in these time frames. The first one is May 31st. Well, don't you—I mean, you could say enticed or persuaded, too, insofar as he's given him a bunch of money. He gets to keep a bunch of money when he— Well, they were—well, my argument is that they were equal partners. They were equal partners. You think Chon got the series of increasingly strong metal doors to put in the tire shop? Okay, now— The tire shop was owned by Adan, right? That's correct. And every time the police raided it, he'd put in more security equipment. Right, Adan did. Yeah. I agree. I agree. But if Chon was a partner, there's no indication that Chon had anything to do with any of that. Well, he may not have had anything to do with that particularly, but he had everything to do. In fact, I'll just point to one of it here. On June 5th—and this is counts 10 and 12—Chon was the one that contacted the supplier and negotiated the price. I'm not saying that every facet—first of all, I would agree with the government's argument to this extent, and that is that Adan was over this. This was basically his baby. I'll concede that. But that doesn't mean that everybody in the organization—if Chon had not been—if he had been 20 years old and he had not been Adan's son, I don't think we'd even be—I don't even think this would be on the radar screen as to whether— Well, of course not. He'd be a co-conspirator if he was— But, okay. Well, I'm not sure that there's anything other than—okay. On July 10th—excuse me, on June 3rd, there's a conversation. This takes place—this is a government exhibit 17B. It's 1913 through 1915 in the record. This is a conversation where Chon has given orders. He's telling Dad what to do, and I think that's significant. Is that the one with the money in the pocket? That's right. That's right. And then on July 10th, this is the only other alternative date that could possibly have been used to satisfy these counts. This is the date when Chon is riding with Carlos Acosta and his brother Vivi and somebody else, and they're pulled over by the police, and Carlos Acosta is found to have cocaine secreted in his crotch. The only interaction that day that I can recall is Chon and Adon having a phone conversation where Chon tells his dad what happens. There's not anything else that went on that day that I could say constitutes— there's nothing in any of those dates that shows me a relationship during those time periods that is fawning or obsequious or anything like that. The two cases, there are a couple of cases that I think give an example of what this statute was designed to address. We've got—this is an unsighted case, and I'll just use an example out of the Northern District of Illinois where gang members used juveniles as security because they could go to jail and get out easier. The Fifth Circuit case, 197 F. 3rd 736, I did cite this in my brief. I think this is where this guy took his 3-year-old child and threw him at law enforcement and then fled. I mean, those are obvious cases of use. But there's—I'm just saying as to these five dates, these four dates on these five accounts, there's nothing there that approaches what I would call use. There was another count also, but you didn't appeal that one, correct? Well, I can't remember. My first brief, I had 14 points of error. The second one had eight. There was a count involving Lolo as a minor. In my initial brief, I argued that one also. I also argued that—I think I had seven or—six or seven of them are jeopardy barred. But after my 22,000-word brief was ordered not to be filed, I had to pare down my issues from 14 to eight. So in this brief, you're right. I did not argue that additional one as to Lolo. Okay. Unless there are any more questions, I'll yield back the rest of my time. No, sir. Thank you. All right. May I please report, Candice Wong for the United States? Subject to this Court's questions, I'd like to pick up where my colleague ended, and that's with the five convictions that issue in this appeal for use of a minor. I think that the record here the government would submit is replete with evidence that the defendant affirmatively engaged his son in these activities. And I'd start with the defendant's own words at sentencing. The defendant himself said, my two sons are the ones that helped me. And there was record evidence in the transcripts that the defendant said to the source that this was a situation where this was his store, these were his workers, his sons helped him, and he didn't want to risk, at one point he said something about he didn't want to have to hire more workers for his shop because they would steal his material. How much of that was in the trial record? That was in the trial record. Well, you said what he admitted was at sentencing, right? The quote that when he said, my two sons are the ones that helped me, is a specific quote from sentencing. I recognize that goes to more the enhancement involving use of a minor. But the statements to the source where he talked about this being his shop, his workers, that's all in the record. And beyond that, Your Honor, I would say that the record as a whole demonstrates that time and again the defendant was the one closing the deals, closing the sales, and then he would issue the directives that Chan would then execute. And throughout that, you can see that quite vividly where, for instance, just to take the June 5th transaction as an example, the defendant reaches a deal with the source. The source says he is going to purchase a quarter kilo of cocaine from the defendant. And the defendant says, I'll tell my son to make the call now. And then, of course, we do have the record evidence of Chan reaching out to Keiko, the supplier, to get that cocaine, to obtain the quarter kilo of cocaine, to cook it, package it, to deliver it then to the defendant and the source. You also have the defendant telling the source that he wants him to meet at his home with just him and his son to make sure that he feels at ease. And that's another example of the defendant affirmatively using his son. But beyond that, as Your Honor noted, the terms of the statute here are quite capacious. It's not just use. It's also employ, hire, use, persuade, induce, entice, coerce. The government would submit that all of those terms are reflected here. And I begin, of course, with my colleague's concession here that but for the defendant, Chan would not have been involved here. Is there any practical difference in challenging these counts as well as the money laundering when he was sentenced to life on the three counts of conspiracy to possess drugs? Sorry, Your Honor. Is there any practical difference? Your Honor, the government's overall point here is that there is no practical difference. All of the defendant's arguments ultimately are challenging not simply a reasonable jury verdict but a situation where the defendant was literally off the charts in terms of his offense level. Well, I understand that. But, I mean, he's got the three counts that carry a life sentence, and that's not appealed, right? There is two counts on which he received life sentences that were run concurrently. One of them has been appealed. Okay. Which one was that? That's the count 31, which was a drug. It involved the largest seizure of the marijuana. It was a possession with intent to distribute counts. Right. But he's still convicted of two counts with concurrent life sentences, right? Yes, Your Honor. And as I understand it, conspiracy to money launder is 20 years, and these use of minors are 40 years each, right? Yes, Your Honor. I would not dispute your premise that ultimately all these alleged errors are harmless. That's all I'm trying to say. As for the case cited by the defendant, I would simply note that the equal partner proposition he cites is a case from the Sixth Circuit that involves a different provision. It doesn't even involve the statute at issue here, 21 U.S.C. 861A, and it really doesn't answer, I think, ultimately the terms that are at issue here, which again are capacious, employing, hiring, using, persuading. Does the government normally break down these counts transaction by transaction, or was the government just going after this fellow full bore? Your Honor, I can't speak generally, but I don't think it's unusual here because these were, of course. Well, I can see if there was more than one minor. You know, there's Chan and Lolo, but five different instances I think it is with Chan, and does the government normally do that? I mean, we get sex trafficking cases all the time that involve underage girls, and every time they went to visit to be prostituted isn't charged as use of a minor. So I just wondered. Yes, Your Honor. Just as it was appropriate for the government to be charging each of these jug transactions, the fact that he used a minor on each of these dates was an aspect of defendant's conduct that was particularly egregious, and in the government's conduct was warranted an additional charge. In any event, the government would note that turning to, unless the court has further questions about the use of a minor, turning to the interstate effects issue that my colleague also raised, this was a situation where the defendant utilized every classic money laundering technique in the book, also knowingly professed that Danny Perez, his car dealer, was your go-to person if what you want to do is essentially money launder, that there's ample evidence supporting that count. On the interstate effects prong, this Court's decisions in Gallo and Westbrook make clear that where you have, as here, this nexus between the money laundered funds and drug trafficking, that that satisfies the minimal interstate effects necessary. And beyond that, we do have record evidence. The government did put on evidence, for instance, Danny Perez's testimony, that made clear that, for instance, his car dealership participated in car auctions in Miami and Texas. Danny Perez testified, and that is in the record, that is record evidence, about the commercial nature of his car dealership, about their interactions with the bank, and together with the fact that there was evidence that these cars were also used in the drug transactions. For instance, I just take the example of Chon driving to deliver the 2-0 of cocaine to Tony in his yellow Corvette, which was the Corvette that there was evidence of being a laundered car. Given that evidence, there was more than sufficient evidence to satisfy not only the interstate effects prong, but the elements of the statute. This Court has no further questions. I want to mention or note that you're from the Department of Justice Criminal Division. What brings you to New Orleans other than the usual, we just like to get out and get some experience? Your Honor, in this case, the Criminal Appellate Division works closely with the U.S. Attorney's Offices and assists whenever they are asked. In this case, the U.S. Attorney's Office in the Southern District of Texas for various resource constraints requested assistance. Well, welcome. Thank you. Unless there are further questions? I guess not. Thank you. Okay, Mr. Kucera. I'd like to speak to one thing, and that is the issue of the auctions in Miami. There's a case law that says that the effect on interstate commerce needs to be present or future as to this particular transaction. And I'll tell you, these are those 50—I'll go ahead and give these sites to the— Sure. Okay. The other thing is, again, we're back to this activities part, which was not argued, and the jury wasn't instructed on it. So, again, relying on activities, to me, based on what my arguments already made, is not something the government can properly do, given that the jury wasn't instructed on it. Other than that, I have nothing else. Mr. Kucera, has anybody told you you look like General Mattis?  General Mattis, the Secretary of Defense. No. Well, that's a compliment. Well, thank you. I never know, so thank you so much. All right. Well, Mr. Kucera, you were court appointed to represent this defendant, and obviously you did comprehensive briefing, and we certainly appreciate it.